David **HIPP, Harry W. McKown, Jr., Brad Stein, Mike Stell, and all others similarly situated, Plaintiffs,**

v.

**LIBERTY NATIONAL LIFE INSURANCE COMPANY, Defendant.**

**No. 95–1332–CIV–T–17A.**

United States District Court, M.D. Florida, Tampa Division.

July 28, 1997.

**1036**

Ross Mathew Goodman, Robert Douglas Permenter, Troy Alan Rafferty, Levin, Middlebrooks, Thomas, Mitchell, Green, Aschner, Proctor & Papantonio, Pensacola, FL, for Plaintiffs and Counter-defendants.

Peter W. Zinober, D. Michael Pointer, II, Zinober & McCrea, P.A., Tampa, FL, Margaret H. Campbell, Martha C. Perrin, Ogletree, Deakins, Nash, Smoak & Stewart, Atlanta, GA, for Defendant and Counter-claimant.

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION FOR SANCTIONS

KOVACHEVICH, Chief Judge.

This cause of action is before the Court concerning: Defendant's Motion for Summary Judgment, Supporting Memorandum, and First Notice of Supplemental Authority (Dkts. 126, 127 and 140); Plaintiffs' Memorandum in Opposition to Defendant's Summary Judgment Motion (Dkt.130); Plaintiffs' First, Second, and Third Notices of Supplemental Authorities (Dkts. 131, 133 and 136); Defendant's Reply to Plaintiffs' opposing Memorandum (Dkt.134); Plaintiffs' Motion and Supporting Memorandum for FRCP Rule 11 Sanctions (Dkt.139); Defendant's Response to Plaintiffs' Motion for Sanctions (Dkt.141); and Plaintiffs' Reply thereto (Dkt.143).

### Procedural Standard for Summary Judgment Motion

Federal Rules of Civil Procedure require a court to grant summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). On a motion for summary judgment, a court must review the record, and all its inferences, in the light most favorable to the nonmoving party. *See, e.g., United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### I. BACKGROUND

On June 22, 1995, Plaintiffs filed a class suit in the Circuit Court in and for Pinellas County, Florida pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.;* the Fair Labor Standards Act, 29 U.S.C. § 216(b); and a Florida-only class action pursuant to the Florida Civil Rights Act of 1992, Florida

Statute § 760.01, *et seq.* Defendant removed the case to this Court and answered. The Fair Labor Standards Act allows age discrimination actions to be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). In their Amended Opt–In Class Action Complaint, Plaintiffs narrowed the parameters of the class to the following:

> All other similarly situated persons are present and past managerial employees, District Managers or above, of Liberty National residing in the United States who are over forty (40) years of age, and who have suffered from a hostile work environment, harassment, termination, resignation, transfer, wage loss, or demotion on account of their age. (Dkt.12, ¶ 7)

Plaintiffs moved to distribute a Proposed Notice of the pending age discrimination class suit to the following potential opt-in class members. The Proposed Notice stated in part:

> To: All persons who are, or were, employed by Liberty National Life Insurance Company on or after August 25, 1993, who are or were managerial employees, district managers or above, residing in the United States, who were over 40 years of age. (Dkt.21, Ex. 5).

This Court approved Plaintiffs' Proposed Notice and defined the class quoting the exact language utilized by Plaintiffs in their Proposed Notice (Dkt.31, pp. 5–6).

In addition to the four (4) named Plaintiffs, over twenty (20) additional Plaintiffs affirmatively filed consents to opt-in to the present class action.

Defendant now moves for summary judgment on several grounds which this Court will examine seriatim.

## II. ANALYSIS

### A. The Temporal Scope of the Opt–In Class

#### 1. General Rules

In general, a person who believes that they have been the victim of age discrimination must file a charge with the Equal Employment Opportunity Commission, ("EEOC") within 180 days of the employer's wrongful conduct, if they are in a "non-deferral state", 29 U.S.C. § 626(d)(1), and within 300 days, if they are in a "deferral state", 29 U.S.C. § 626(d)(2). Non-deferral states are those without state laws banning age discrimination in employment, and without an authorized state entity to grant or to seek relief for the grievants of such discrimination. Deferral states have state laws prohibiting age discrimination and a state entity authorized to grant or seek relief for the grievants of such discrimination. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1100, nn. 20–21 (11th Cir.1996). The purposes of the requirement that a plaintiff file an EEOC charge within 180 days (or 300 days in a deferral state) of the allegedly illegal act or practice are: (1) to give the employer prompt notice of the complaint against it, and (2) to give the EEOC sufficient time to attempt the conciliation process before a civil action is filed. See *Larkin v. Pullman–Standard Div.*, 854 F.2d 1549, 1562–65 (11th Cir.1988), *vacated on other grounds sub nom, Swint v. Pullman–Standard,* 493 U.S. 929, 110 S.Ct. 316, 107 L.Ed.2d 307 (1989).

"The single-filing rule (or 'piggybacking rule') provides that under some circumstances, a grievant who did not file an EEOC charge may opt into a class action by 'piggybacking' onto a timely charge filed by one of the named plaintiffs in the class action." *See Grayson,* 79 F.3d at 1101. An employment discrimination plaintiff may piggyback provided that: (1) the relied upon charge to which they are piggybacking is not invalid, and (2) the individual claims of the filing plaintiff and the non-filing, piggybacking plaintiff arise out of similar discriminatory treatment in the same time frame. *See Calloway v. Partners National Health Plans,* 986 F.2d 446, 450 (11th Cir.1993). The "piggybacking rule" is available in ADEA cases as long as the *Calloway* requirements are met. *See Grayson,* 79 F.3d at 1102.

In applying the piggybacking rule, courts have defined the temporal scope of the class based on a timely filed charge of one of the named plaintiffs. *See Grayson,* 79 F.3d at 1103. Courts have also held that a charge

filed by a party other than a named plaintiff could be used to establish the temporal scope of the class, where the charge sufficiently informed both the employer and the EEOC of the imminent class complaint. *See Grayson,* 79 F.3d at 1103 (citing) *Larkin,* 854 F.2d at 1565.

■■■ A representative EEOC charge, upon which "piggybackers" may rely, must provide sufficient notice of the scope of the class. *Cf. Grayson,* 79 F.3d at 1104 (Court found that Grayson's June 14, 1991 EEOC charge of systematic age discrimination put the EEOC on notice for discrimination occurring prior to Grayson's charge, but not on notice of discrimination occurring after June 14, 1991.) The representative charge should be the first timely filed charge of one of the named plaintiffs that gives adequate notice of the scope of the class. *See Grayson,* 79 F.3d at 1104–05.

### 2. David Hipp's EEOC Charge

■ Defendant maintains that a *Grayson* analysis limits the piggyback period in time rearward to 180 days before a named plaintiff's EEOC filing date in a non-deferral state and 300 days before in a deferral state, and that the piggybacking period ends on the date of the last discriminatory act claimed in the first timely charge (Dkt.127, p. 3). Defendant argues that named Plaintiff David Hipp's EEOC charge was not timely filed and so under *Calloway* his EEOC charge creates no piggybacking window. This Court disagrees. Plaintiff Hipp's EEOC charge was received June 23, 1994. Plaintiffs allege the date of the last discriminatory act against him was August 31, 1993, the date of his resignation (Ex. 130, Termination Notice, Vol. I, tab 2). This alleged last discriminatory act is less than 300 days rearward from his June 23, 1994, EEOC charge as required by deferral states (such as in this instance, Florida). This Court finds therefore that Plaintiff Hipp's EEOC charge was timely filed and meets the first prong of the *Calloway* test.

### 3. EEOC Charges of Harry w. McKown, Jr., Brad Stein, Lloyd Ray Bush, Billy Bush, and Ronald Stell.

■ Defendant admits that named Plaintiffs McKown and Stein filed timely EEOC allegations on December 9, 1994 (Dkt.127, p. 3). This Court agrees with Defendant's admission and finds that McKown and Stein timely filed their EEOC charges. Moreover, there are other unnamed opt-in Plaintiffs who timely filed with the EEOC; namely, Lloyd Ray Bush, Billy Bush, and Ronald Stell (Ex. 130, Tabs 3–5) Their EEOC charges could be used to establish the temporal scope of the class, so long as their charges sufficiently informed both the employer and the EEOC of the imminent class complaint. *See Grayson,* 79 F.3d at 1103 (citing) *Larkin,* 854 F.2d at 1565. The EEOC charges of Lloyd Ray Bush, and Billy Bush explicitly allege that Defendant engaged in a pattern and practice of age discrimination. (Ex. 130, Tabs 3–4). Ronald Stell's EEOC charge alleges constant threats and harassment as well as the proposition that Defendant was terminating older employees while retaining less productive, younger employees. (Ex. 130, Tab 5). In sum, this Court finds that these EEOC charges sufficiently informed both Defendant and the EEOC of the imminent class complaint. This Court finds that the filed EEOC charges of Plaintiffs Hipp, Stein, McKown, Lloyd Ray Bush, Billy Bush, and Ronald Stell may serve to define the temporal scope of the class and denies Defendant's summary motion as a matter of law on this point.

The Court agrees with Plaintiffs' continuing violation theory arguments, alleging that where there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitation's period. *See Sosa v. Hiraoka,* 920 F.2d 1451, 1457 (9th Cir.1990); *Hull v. Cuyahoga Valley Bd. of Educ.,* 926 F.2d 505, 510–11 (6th Cir.), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991). A continuing violation would equitably toll the requirement for filing an EEOC charge 180 or 300 days after the alleged unlawful employment practice occurred, if Plaintiffs can demonstrate that Defendant's actions are part of an ongoing practice or pattern of discrimination. However, since this court has already

adopted Plaintiffs' temporal scope position on other grounds, such further supporting analysis is unnecessary.

## B. Subject Matter of the Opt–In Class

█ Defendant argues that, since Plaintiff Stein's EEOC charge is the only EEOC charge temporally suitable for piggybacking, the subject matter of any collective action is limited to Plaintiff Stein's charge of constructive discharge. Plaintiffs argue that the EEOC charges of Hipp, Stein, McKown, Stell, Billy Bush and Lloyd Bush are broad enough to encompass all of the piggybackers in this case.

█ The second prong of the *Calloway* rule allows piggybacking if the named filing plaintiff's charge and the piggybacker's claim arise out of similar discriminatory treatment in the same time frame. *Calloway*, 986 F.2d 446. Strict symmetry between filing Plaintiffs' charges and the claims of the opt-in Plaintiffs is not the standard; rather, "sufficiently similar" is the standard. Under this standard, nothing more is required "than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Glass v. IDS Financial Services Inc.*, 778 F.Supp. 1029, 1080 (D.Minn. 1991) (*quoting Sperling v. Hoffman–La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988), *aff'd in part on other grounds and appeal dismissed in part on other grounds*, 862 F.2d 439 (3d Cir.), *aff'd and remanded on other grounds*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

Named Plaintiffs Hipp, McKown, and Stein's EEOC charges allege harassment and constructive discharge (Ex. 130, Tabs 1,6,7). The EEOC charges of named Plaintiffs McKown and Stein allege a uniform practice and policy of age discrimination by forcing older employees to retire, take demotions, terminate employment, and/or subjecting them to continued harassment and abuse (Ex. 130, Tabs 6,7). This Court declines to limit the piggybackers' claims to constructive discharge finding that under the *Calloway* "similar discriminatory treatment" standard the named filing Plaintiffs' claims are broad enough to encompass the piggybacking Plain-

tiffs' claims. This Court therefore denies Defendant's summary judgment on this point and finds that the scope of subject matter for piggybacking Plaintiffs is not limited to constructive discharge.

## C. The Class Definition

Although this Court has held that the opt-in Plaintiffs are not barred by improper piggybacking, an issue remains as to whether these Plaintiffs actually fit the class definition, as proposed by Plaintiffs, which this Court accordingly defined verbatim from Plaintiffs' proposed notice. (Dkt. 21, Ex. 5; Dkt. 31, pp. 5–6). In order to meet the class definition, Plaintiffs must meet the following criteria: (1) are, or were, employed by Liberty National Life Insurance Company on or after August 25, 1993; (2) are or were managerial employees, district managers or above; (3) residing in the United States; and (4) who were over 40 years of age. Plaintiffs took no action to modify, clarify or amend this class definition that they themselves defined and that this Court, taking no position on the merits of the case, accepted. Furthermore, although this Court has not and will not bar Plaintiffs on the grounds that improper piggybacking has taken place, it is the opinion of this Court that in all fairness to Defendant, all Plaintiffs in this suit must meet the criteria of the class definition as set forth early on and unamended by Plaintiffs.

Defendant's Memorandum in Support of Summary Judgment attempts to limit the temporal scope of the collective action to Stein's EEOC charge (Dkt.127, p. 3). Defendant contends that this would create two (2) piggybacking periods: (1) June 13 through July 10, 1994 for Plaintiffs in Alabama, Georgia, and Mississippi; and (2) February 11 through July 10, 1994 for Plaintiffs in Florida, South Carolina, and Tennessee. Later, Defendant uses the term "relevant period" in attempting to place several individual claims of Plaintiffs inside or outside of what Defendant refers to as the "relevant period" of Plaintiffs' claims. One such example is Plaintiff Lloyd Bush. Defendant alleges that Lloyd Bush was an Agent in Anniston, Alabama throughout the "relevant period". He retired in June 1996, and was not a District

**1040**

Manager at any time during the "relevant period." (Dkt.127, p. 7). It is this Court's interpretation that Defendant's use of the term "relevant period" refers to Defendant's two (2) proposed piggybacking periods and not the August 25, 1993, class deadline cutoff. This Court has refused to limit the piggybacking claims to these two (2) window periods, so many of Defendant's "outside the relevant period" contentions are unsupportable. However, some of Defendant's allegations are more precise as to the time frame in question and are relevant to the criteria set forth in the class definition which this Court now examines.

Defendant alleges that Plaintiff Clyde Coris was not employed by Liberty National at all during the relevant period having resigned in May 1993. (McCollum Aff. 1, Tab F, ¶ 11). Clyde Coris admits to being licensed to sell insurance for American General Life and Accident from June 1993 to the present. (Ex. 127, Coris Int. Resp. ¶ 13). Plaintiffs did not rebut Defendant's allegation that Coris was no longer employed with Liberty after May 1993. This Court finds therefore that Plaintiff Clyde Coris was not employed by Liberty National Life Insurance Company on or after August 25, 1993. This Court grants summary judgment for Defendant against unnamed Plaintiff Clyde Coris on the grounds that Plaintiff Coris falls outside the scope of the class as defined by Plaintiffs.

Defendant alleges that Plaintiff Jerry Dowling was not employed by Liberty National at all during the relevant period, having resigned in May 1993 for personal reasons. (McCollum Aff. 1, Tab F, ¶ 12). Plaintiffs did not rebut Defendant's allegation that Dowling had resigned in May 1993. This Court finds therefore that Plaintiff Dowling was not employed by Liberty National Life Insurance Company on or after August 25, 1993. This Court grants summary judgment for Defendant against unnamed Plaintiff Jerry Dowling on the grounds that Plaintiff Dowling falls outside the scope of the class as defined by Plaintiffs.

Defendant admits that Lloyd Bush worked as a Sales Manager in August 1993 and that Billy Bush was a Sales Manager from 1993 to 1995. (McCollum Aff. 1, Tab F, ¶¶ 8–9). It is this Court's opinion that a "Sales Manager" does not fit within the second criterion of the class definition requiring that Plaintiffs be individuals who, "are or were managerial employees, district managers or above." In reaching this conclusion, the Court is aware of two possible constructions. First, the criterion could create three distinct categories of employees: (1) managerial employees, (2) district manager employees, and (3) employees who rank higher than district managers. A second construction would create one category of managerial employees, but only including in that category, those employees who are district managers or those who rank higher than district managers. The second construction would exclude "managerial employees" below the rank of district manager. Since the Proposed Notice was drafted by Plaintiffs, this Court is inclined to construct this criterion against the drafter, taking the second construction, which restricts Plaintiffs to individuals who are district managers or above.

In Defendant's Memorandum of Law in support for Summary Judgment, Defendant asserted that Billy Bush and Lloyd Bush were not District managers at any time during the relevant period (Dkt.127, p. 7). Plaintiffs agree that Billy Bush and Lloyd Bush were not district managers on or after August 25, 1993 (Dkt.135, p. 7). Plaintiffs have not controverted Defendant's contention that Billy Bush and Lloyd Ray Bush were "only" Sales Managers, nor have Plaintiffs alleged that Billy Bush and Lloyd Ray Bush were employed in managerial positions above those of district manager. Furthermore, Plaintiffs admit that under the continuing violation theory, they could have asked the Court for a more expansive notice (Dkt.135, p. 6). The Court agrees that Plaintiffs could have asked for a more expansive notice, but finds that Plaintiffs did not. The Court also notes that Plaintiffs never sought to amend the class definition as set by this Court in a previous order (Dkt.31. pp. 5–6). Therefore, this Court finds that Billy Bush and Lloyd Ray Bush fall outside the scope of the class as defined by Plaintiffs, and so grants sum-

mary judgment for Defendant against Billy Bush and Lloyd Ray Bush.

### D. ADEA Prima Facie Case

#### 1. Standards of proof

In an ADEA case, "the plaintiff bears the ultimate burden of proving that age was a determinative factor in the employer's decision to terminate his employment." *e.g., Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir.1988). "A plaintiff must establish a *prima facie* case of discrimination through one of three generally accepted methods: by direct evidence of discriminatory intent; by meeting the test set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); or through statistical proof." *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989).

■ When a case is based on circumstantial evidence, courts generally employ a variant of the *McDonnell Douglas* analysis whereby a plaintiff can establish a *prima facie* case by showing: "(1) that he was in a protected age group and was adversely affected by an employment decision, (2) that he was qualified for his current position or to assume another position at the time of discharge or demotion, and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue." *Alphin v. Sears*, 940 F.2d 1497, 1501 (11th Cir.1991). "To establish a *prima facie* case of discrimination, the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion." *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 290 (8th Cir.1982), *cert. den.* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438. If a plaintiff satisfies their *prima facie* burden, then the defendant must proffer some legitimate nondiscriminatory reason for her actions. See *McDonnell Douglas*, 411 U.S. 792, 801, 93 S.Ct. 1817, 1823–24, 36 L.Ed.2d 668 (1973). Once the employer proffers such reason, the plaintiff must show by a preponderance of the evidence that the employer's asserted legitimate reason for its actions or treatment is merely pretextual. *See, e.g., Alphin* 940 F.2d at 1501.

#### 2. Plaintiff Brad Stein

Defendant alleges that named Plaintiff Brad Stein has not met the essential elements of his claim because: (1) he was replaced by a person 14 years his senior, (2) was not qualified to remain as a District Manager because he violated his employment contract by working for another insurance company while employed by Liberty, (3) Stein's resignation was not constructive discharge, and (4) that the treatment he received was neither objectively intolerable nor based on age. Furthermore, Defendant alleges that, even if Stein could present a *prima facie* case, Defendant Liberty had legitimate, nondiscriminatory reasons for its actions which Stein cannot show were pretextual.

■ This Court agrees with Defendant that Stein's replacement, Stanley Watson, who is 14 years older than Stein, is on its face, somewhat damaging to Defendant's *prima facie* age discrimination claim under a *McDonnell Douglas* circumstantial evidence test. However, Plaintiff has presented evidence that Watson was just a temporary replacement designed as a defense against a possible age discrimination claim. This evidence consists of: (1) inference that Defendant was aware that Stein might win if he filed suit as Defendant had recently lost a lawsuit filed by a black female in relation to Liberty's hiring and promotion practices (Ex. 130, McKown Dep. at 218), (2) although Watson was the most qualified replacement, he was not Liberty's first choice and was only selected four to six weeks later, after four others had turned down the offer (Ex. 130, Stein Aff., ¶ 6–8), (3) when Stein recommended Watson for the position, Andrew King (an executive with Liberty) told Stein that Watson could not get the position because of his advanced age (Ex. 130, Stein Aff., ¶ 6–8), and (4) Watson is no longer employed as a district manager at Liberty National, having been replaced by Harry Hauser, a thirty-nine-year-old (Ex. 130, Stein Aff., ¶ 8; The Beacon, April 1996, Tab 9; The

**1042**

Beacon, May 1996, Tab 10; List of all managers and their Dates of Birth produced by Defendant, Tab 12; Growth Charts produced by Defendant, Tab 11). In viewing these alleged special facts and circumstances and their inferences in a light most favorable to Plaintiffs, namely that Defendant was "covering their tracks" with a short term replacement, this Court finds that Stein's immediate replacement, although 14 years his senior, does not, by itself, preclude Stein from presenting a *prima facie* case of age discrimination.

■ Defendant admits that Stein was aggressively supervised and closely scrutinized by his superior Andrew King, but asserts that management had implemented numerous operational changes which applied to District Managers throughout King's division regardless of age (Dkt.127, pp. 20–21). In rebuttal, Plaintiff Stein alleges that: (1) his treatment was part of a design to get rid of the older employees (Ex. 130, Stein Dep. at 196, 214), (2) "Andrew King, known for his age animus," would make harassing phone calls, send threatening letters, and impose unreachable goals (Ex. 130, Stein Dep. 161–164), (3) the continued harassment was not mere attempts to get employees to improve, but in his case actually brought on an ulcer (Ex. 130, Stein Dep. at 188, 207, 212), and (4) in discussing his situation with other district managers, including Woody McKown and David Hipp, Stein alleges that the older, over 40–year–old district managers "were all ready to blow [their] brains out trying to figure out what [King] was trying to do." (Ex. 130, Stein Dep. at 189).

The granting of summary judgment in employment discrimination cases necessarily involves examining motive and intent. *See. e.g., Hayden v. First Nat'l Bank,* 595 F.2d 994, 997 (5th Cir.1979). Accordingly, it is of no surprise that courts advise caution in granting summary judgment in employment discrimination cases. *Id.* at 997; *Accord Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991) ("Summary judgment should seldom be used in cases alleging employment discrimination.").

■ In reviewing Defendant's claim for summary judgment against Stein, this Court is not only limited to Stein's deposition or affidavits, but rather to the evidence on record concerning whether Stein may have been a victim of a pattern and practice of age discrimination alleged by Plaintiffs. The Court finds the record replete with age-related comments which if believed true would lend support to Stein's claim. This Court finds therefore that a genuine issue to a material fact is in dispute, namely whether Defendant's actions constituted intentional age discrimination or were mere attempts to improve its operations. This Court finds that the evidence viewed in the light most favorable to Plaintiff Stein is sufficient to support an inference that the defendant employer based its employment decisions on an illegal criterion. Furthermore, this Court disagrees that Stein was no longer "qualified" to continue in his current position based on a breach of contract with Defendant. Since there is evidence to indicate that Stein may have experienced discrimination, a jury could reasonably conclude that his alleged breach was merely pursued in mitigating his damages. The Court also finds that Stein is a member of the protected class as he was over forty (40) when the alleged discriminatory treatment took place. Accordingly, the Court finds that Plaintiff Brad Stein has presented a *prima facie* case under a variant of the *McDonnell Douglass* test *Supra,* and denies Defendant's summary judgment motion against Brad Stein.

### 3. Plaintiff Millard Hasting

Defendant alleges that Millard Hasting has failed to establish the elements of his claim because: (1) he was replaced by Eugene Chunn who was forty years old and less than two years younger than Hasting, (2) his working conditions were not objectively intolerable nor based on age, and (3) Defendant's proffered reasons for his treatment are true, so there is no evidence of pretext.

■ In presenting a *prima facie* case, the fact that one person in the protected class has lost out to another in the protected class is irrelevant, so long as he has lost out because of his age. *See O'Connor v. Consolidated Coin Caterers Corp.,* — U.S. —,

116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). The *prima facie* case requires evidence adequate to create an inference that an employment decision was based on an [illegal] discriminatory criterion. *See Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger. *See O'Connor*, — U.S. —, 116 S.Ct. 1307, 134 L.Ed.2d 433. It is this Court's opinion that for age discrimination purposes, a difference of less than two years between two workers both in their forties is *per se* an insignificant difference in age. The Court finds that Hasting's replacement by Chung does not establish an inference of age discrimination. This finding however is not fatal to Hasting's claim.

■ In order for Hasting to establish a *prima facie* case he must show: (1) that he was in a protected age group and was adversely affected by an employment decision, (2) that he was qualified for his current position or to assume another position at the time of discharge or demotion, and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue. *Alphin*, 940 F.2d at 1501. Hasting was over forty during the time he alleges discriminatory treatment and so was in the protected age group. Defendant admits Hasting was qualified for his current position, or to assume another position, at the time of his alleged constructive discharge, because Hasting was offered a transfer opportunity at the time he reported his resignation (Dkt.127, p. 27). The real issue is whether there is enough evidence by which a fact finder might reasonably conclude that the employer intended to discriminate against Hastings on the basis of age, despite the fact that Hasting was replaced by a person insignificantly younger.

This Court takes the position that it is reasonably possible for an employer to intentionally discriminate against one employee using age-based threats, harassment and intimidation thereby creating a work environment so hostile that the employee feels reasonably compelled to resign, and that after such resignation it is possible for the employer to replace the employee with an insignificantly younger employee. This Court is aware that an insignificantly younger replacement is probative evidence that the employer did not engage in age discrimination. Moreover, if this were the only supporting evidence of age discrimination on record, this Court might not hesitate to grant summary judgment for the Defendant.

However, this Court finds that there is enough evidence on the record by which a fact finder might reasonably conclude that Defendant intended to discriminate against Millard Hasting. Hasting alleges a pattern and practice of discrimination supported by many alleged age-related comments (Ex. 130, Hasting Dep. at 213, 233), alleged hiring policy of not hiring anyone over the age of fifty-five (Ex. 130, Hasting Dep. 90–92, 98, 103, 224, 256), threats of retaliation if such a policy was not followed (Ex. 130, Hasting Dep. 229–30), Hasting's subjective belief that his refusal to follow such policy may have contributed to his constructive discharge (Ex. 130, Hasting Dep. at 252), an alleged statement by C.B. Hudson, an executive with Liberty, to the effect that "he was going to do what he wants and leave it to his lawyers to clean up afterwards" (allegedly concerning Defendant's practice of not hiring anyone over age fifty-five), as well as Hasting's alleged arbitrary treatment or harassment that Hasting contends was merely a pretext for age discrimination. Such evidence, if believed, would allow a factfinder to reasonably conclude that the Defendant intended to discriminate on the basis of age in its treatment of Plaintiff Hasting. Therefore, the Court finds that Plaintiff Hasting has presented a *prima facie* case under a variant of the *McDonnell Douglas* test.

The substance of Defendant's argument against Hasting's claim is that Liberty's actions towards Hasting were based on a desire to maintain high performance standards, not to discriminate, and that Hasting voluntarily resigned simply because "he did not like— and never had liked—working" for his superior, Harrison, in any capacity (Dkt.127, p. 29). For summary judgment purposes this

**1044**

Court finds that a genuine issue of a material fact is in dispute, namely, Defendant's intent in its treatment of Millard Hasting. This Court therefore denies summary judgment for Defendant against Plaintiff Millard Hasting.

**4. Plaintiff Harry McKown**

Defendant contends that: (1) Harry McKown has not presented a *prima facie* case because he was replaced by John Bowman who is five years older than McKown (Dkt.127, p. 33), (2) McKown's resignation was voluntary and not a constructive discharge, and (3) McKown cannot show Liberty's conduct was pretextual.

■ Plaintiffs maintain that Harry McKown was originally replaced by Craig Harrison, not John Bowman (Ex. 130, McKown Dep. at 198), and that Harrison is significantly younger than McKown (Ex. 130, Sexton Dep. 112; McKown Dep. at 8). These depositions suggest that Harrison may be at least ten (10) years younger than Harry McKown. The Court therefore is unable to find that McKown has not met his *prima facie* burden based on Defendant's allegation that McKown was replaced by a person five (5) years his senior.

■ Defendant's two other grounds for granting summary judgment against McKown go to the heart of the dispute of this entire' case. Defendant contends its actions were nondiscriminatory measures designed to increase company performance as part of an aggressive company wide turnaround effort in the early 1990's (Dkt.127, p. 34). The Court concedes that this very well may be true. However, Plaintiff McKown alleges that in this pursuit, Defendant discriminated against older employees by instituting discriminatory hiring policies which McKown was told to enforce (Ex. 130, McKown Dep. 43–44, 45, 47, 96, 185), making age-related comments about older people (Ex. 130, McKown Dep. at 31, 33–34), and harassing older employees. Besides McKown's circumstantial evidence, McKown has presented evidence which this court deems may amount to direct evidence of age discrimination. In an alleged conversation with Don Horton, McKown's supervisor, in which McKown was "trying to figure out why the harassment, what was going on," McKown alleges that Don Horton said that "he [Don Horton] felt like older district managers were being targeted, including himself [Don Horton], because of his age." (Ex. 130, McKown Dep. 207–08). Although this statement is couched in "I feel like" terms, if Horton's speculative assertion is true, i.e., employees were being targeted because of their age, it is not a far leap to conclude that McKown was being discriminated against because of his age, especially when it was his supervisor who offered the explanation for the harassment. This Court finds that a genuine issue of a material fact is in dispute, namely, Defendant's intent in its treatment of Plaintiff Harry McKown. This Court therefore denies summary judgment for Defendant against Plaintiff Harry McKown.

**E. Defendant's Breach of Contract Claims**

Defendant has moved for summary judgment against Plaintiffs Brad Stein and Harry McKown on its counterclaims for violation of their employment contracts. Since the Court has found that both Plaintiffs may have suffered unlawful discrimination, the Court is unable to adequately consider Defendant's breach of contract claims. At this time, the Court makes no finding as to whether a breach of contract occurred. The Court notes that even if a breach did occur, an ultimate finding that these two (2) Plaintiffs suffered unlawful discrimination would most likely turn Plaintiffs' alleged breach into equitable mitigation of damages. This Court therefore denies summary judgment on Defendant's counterclaims, without prejudice to reassert, after the issue of discrimination is decided, if appropriate.

**III. RULE 11 SANCTIONS**

■ Plaintiffs have moved for sanctions against Margaret H. Campbell, Esquire, and the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. pursuant to Rule 11, F.R. Civ. P. The basis of the Plaintiffs' sanction motion lies in the language of Defendant's Reply Brief in Support of Defendant's

Motion for Summary Judgment (Dkt.134). The Court agrees with Plaintiffs that Defendant used strong language involving allegations of fact and allegations of possible improper contact by counsel with possible opt-in Plaintiffs. The Court was not pleased with the tone taken by Defendant in that reply and assures Plaintiffs, and admonishes Defendant, that it is not, and will not, be persuaded by this type of rhetorical flourish. Furthermore, this Court is aware that the issues in this case are highly contested and that counsel for both sides hold completely different legal and factual positions concerning the underlying matters involved in this litigation. However, this Court finds that Defendant's allegations were not made in bad faith, but merely articulated strongly. For this reason, this Court denies Plaintiffs' Motion for Sanctions under Rule 11, F.R.Civ.P. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt.126) **be denied** in part, and **granted** in part; that Plaintiffs Clyde Coris, Jerry Dowling, Billy Bush, and Lloyd Ray Bush **be dismissed** from this action; and that Plaintiffs' Motion for Rule 11 Sanctions (Dkt.139) **be denied**.