Bill BUSH, et al., Plaintiffs,

v.

**LIBERTY NATIONAL LIFE
INSURANCE COMPANY,**
Defendant.

Civil Action No. 97–T–1272–N.

United States District Court,
M.D. Alabama,
Northern Division.

March 31, 1998.

Mary E. Pilcher, Brian F. Aylstock, Ross M. Goodman, Levin, Middlebrooks, Thomas, Mitchell, Green, Echsner, Proctor & Papantonio, P.A., Pensacola, FL, Archie C. Lamb, Jr., Elizabeth Joy Hubertz, Levin, Middlebrooks, Mabie, Thomas, Mitchell, Papantonio & Lamb, Birmingham, AL, for Bill Bush, Lloyd Ray Bush, Clyde Nicholas Coris and J.A. Dowling.

Philip H. Butler, Charles B. Paterson, Robison & Belser, P.A., Montgomery, AL, Margaret H. Campbell, Gregory J. Hare, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Atlanta, GA, for Liberty Nat. Life Ins. Co.

### *MEMORANDUM OPINION*

MYRON H. THOMPSON, District Judge.

Plaintiffs Bill Bush, Lloyd Ray Bush, Clyde Nicholas Coris, and J.A. Dowling brought this lawsuit alleging that defendant Liberty National Life Insurance Company discriminated against them because of their age, in violation of the Age Discrimination in Employment Act (ADEA), as codified, 29 U.S.C.A. §§ 621 through 634. Jurisdiction is proper under 29 U.S.C.A. § 626(c)(1) (ADEA) and 28 U.S.C.A. §§ 1331 (general federal question) and 1343 (civil rights). The case is now before the court on Liberty National's motion for summary judgment, filed December 2, 1997. For the reasons that follow, Liberty National's motion is granted.

### I. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### II. BACKGROUND

The court finds the relevant and salient background facts to be as follows:

#### A. Ray Bush

*1961:* Ray Bush was hired by Liberty National.

*October 1984:* Ray Bush became a district manager in Jacksonville East, Florida.

*November 1991:* Ray Bush was demoted from his position as district manager in Jacksonville East, Florida.

*December 1991:* Ray Bush was reassigned to be a sales manager in Thomasville, Georgia.

*August 1993:* Ray Bush took a lateral transfer to a sales manager position in Anniston, Alabama.

*March 14, 1994:* Ray Bush was demoted from his sales manager position to a position as an agent in Anniston, Alabama.

*April 23, 1994:* This was the latest date on which Ray Bush could have shown present discrimination based on his October 20, 1994, charge with the Equal Employment Opportunity Commission, commonly referred to as the EEOC.

*October 20, 1994:* Ray Bush filed an EEOC charge based on his 1991 and 1994 demotions. He later alleged that he was constructively discharged in 1996, and that his discharge should be covered under this charge as well. The charge came almost three years after the 1991 demotion, and 220 days after the 1994 demotion.

*June 14, 1996:* Ray Bush retired, and alleged that he was constructively discharged.

### B. Bill Bush

*1965:* Bill Bush was hired by Liberty National.

*1985:* Bill Bush became a district manager in Thomasville, Georgia.

*August 6, 1993:* Bill Bush was demoted from his position as district manager in Thomasville, Georgia.

*May 7, 1994:* This was the latest date on which Bill Bush could have shown present discrimination based on his November 3, 1994, EEOC charge.

*November 3, 1994:* Bill Bush filed an EEOC charge based on his August 6, 1993, demotion. The charge came 454 days after the 1993 demotion.

### C. Clyde Nicholas Coris

*October 1960:* Coris was hired by Liberty National.

*November 1987:* Coris became a district manager in West Palm Beach, Florida.

*May 30, 1993:* Coris resigned his position as a district manager in West Palm Beach, Florida.

### D. J.A. Dowling

*Early 1963:* Dowling was hired by Liberty National.

*July 1991:* Dowling became an agent in Bessemer, Alabama.

*May 18, 1993:* Dowling resigned his position as an agent in Bessemer, Alabama.

### E. The Florida Litigation

*August 25, 1993:* This date was the cut-off date contained in a class-certification order entered by the United States District Court for the Middle District of Florida in the case *Hipp v. Liberty National Life Ins. Co.,* 973 F.Supp. 1033 (M.D.Fla.1997). The order described the class as "All persons who are, or were, employed by Liberty National Life Insurance Company on or after August 25, 1993, who are or were managerial employees, district managers or above, residing in the United States, who were over 40 years of age." The order was dated February 6, 1996.

*February 6, 1996:* The United States District Court for the Middle District of Florida entered its certification of the class in *Hipp.* *See* August 25, 1993. All four plaintiffs in this case attempted to join the *Hipp* class even though they did not satisfy *Hipp*'s class description.

*July 28, 1997:* The Florida district court granted Liberty National's motion for summary judgment to dismiss all four plaintiffs in this case from *Hipp* because they were "outside the scope of the class as defined by Plaintiffs." *See Hipp v. Liberty Nat'l Life Ins. Co.,* 973 F.Supp. 1033, 1040 (M.D.Fla. 1997).

### F. The Instant Lawsuit

*August 22, 1997:* Bill and Ray Bush filed this lawsuit.

*September 18, 1997:* Bill and Ray Bush amended their complaint to include Coris and Dowling as plaintiffs.

## III. DISCUSSION

In its motion for summary judgment, Liberty National challenges the timeliness of Bill and Ray Bush's EEOC charges, which underlie this lawsuit. After a careful examination of the evidence presented by the plaintiffs, the court concludes that the evidence demonstrates that the Bushes' charges were not timely. The untimeliness of their EEOC charges leaves all of the claims in this lawsuit, including those of Coris and Dowling, subject to dismissal. The basis for the dismissal of Bill and Ray Bush's claims is discussed in the first section below, and the

basis for the dismissal of Coris and Dowling's claims is discussed in the second.

## A.

▇ The ADEA's purpose is to "promote employment of older persons based on their ability rather than age[, and] to prohibit arbitrary age discrimination in employment." 29 U.S.C.A. § 621(b). To this end, the ADEA has specific provisions prohibiting discrimination in employment because of age, and allowing redress for any violations of this prohibition. *See* 29 U.S.C.A. §§ 623, 626. One form of redress is the filing of a lawsuit against the allegedly discriminating employer. An employee, however, may not file a lawsuit unless he has timely filed a charge of discrimination with the EEOC "within 180 days after the alleged unlawful practice occurred." 29 U.S.C.A. § 626(d)(1).[1] *McClinton v. Alabama By–Products Corp.,* 743 F.2d 1483, 1485 (11th Cir.1984).

▇ In this case, neither Bill nor Ray Bush filed a charge with the EEOC within the 180–day period after the discriminatory acts they have alleged.[2] Nevertheless, because the 180–day bar functions like a statute of limitations and does not serve as a jurisdictional prerequisite to suit, it is subject to the equitable doctrines of waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982);[3] *McClin-*

*ton,* 743 F.2d at 1485. A plaintiff can also be relieved of the bar for claims outside of the period by successfully establishing that he or she has been subject to a 'continuing violation.' *See, e.g., Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 25 (2d Cir.1985).

In this case, Liberty National timely raised the issue of the timeliness of the Bushes' EEOC charges, and thus cannot be considered to have waived any right to challenge it. And to invoke the doctrine of equitable tolling, the plaintiffs would have to make a showing that there was some form of excusable neglect for the Bushes' not filing within the 180–day period, and they have not even suggested this. The plaintiffs therefore do not raise the issue of waiver here, nor do they raise the issue of equitable tolling.

▇ The plaintiffs do assert that Liberty National is precluded from attacking the timeliness of the Bushes' EEOC charges based on the doctrine of collateral estoppel. The party asserting collateral estoppel bears the burden of proving its application, and, for collateral estoppel to apply, three prerequisites must be shown: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier

1. As indicated, § 626(d)(1) allows a plaintiff 180 days in which to file a charge of discrimination with the EEOC. Section 626(d)(2) expands this period to 300 days in states that have a law prohibiting discrimination in employment because of age and an agency responsible for seeking relief from such discriminatory practices. *See* 29 U.S.C.A. § 633(b). Neither Alabama nor Georgia has a qualifying statute or such a state agency, and therefore both states' filing period is 180 days. Florida, on the other hand, does have a qualifying statute and such a state agency, and thus the 300–day filing period applies to Florida.

The plaintiffs suggest that Florida's 300–day filing period should apply here. The court does not agree. First, they cite no authority to support this position. In addition, although it is true that Ray Bush lived and worked in Florida at one time, all but one of the relevant discriminatory events took place in either Georgia or Alabama; also it is noteworthy that the plaintiffs have specifically chosen to pursue their rights in Alabama. The connection to Florida is therefore very limited. The most substantial connection with Florida is Ray Bush's 1991 demotion; but

even if this was enough to invoke the 300–day limitation period, this event would not extend the 300–day period to every discriminatory act alleged in this lawsuit, for this particular act occurred well beyond 300 days before Ray Bush filed his 1994 EEOC charge. Consequently, the court applies the 180–day limitation period in this case.

2. The plaintiffs' counsel conceded this during the pretrial conference in this case, held March 11, 1998.

3. In considering issues under the ADEA, the court notes that "The Eleventh Circuit has adapted to issues of age discrimination the principles of law applicable to cases arising under the very similar provisions of Title VII[, of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17]." *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993). Consequently, the court refers to cases brought under both the ADEA and Title VII in this order.

action. *Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of North America, Inc.*, 32 F.3d 528, 532 (11th Cir.1994). In this case, the plaintiffs have not satisfied the burden of showing that collateral estoppel applies.

Turning directly to the second prerequisite—that the issue must have been actually litigated in the prior litigation—the plaintiffs rely on one paragraph in the July 28, 1997, order issued by the United States District Court for the Middle District of Florida in the case of *Hipp v. Liberty Nat'l Life Ins. Co.* That court wrote:

> "Moreover, there are other unnamed opt-in Plaintiffs who timely filed with the EEOC; namely, Lloyd Ray Bush, Billy Bush, and Ronald Stell.... Their EEOC charges could be used to establish the temporal scope of the class, so long as their charges sufficiently informed both the employer and the EEOC of the imminent class complaint.... The EEOC charges of Lloyd Ray Bush, and Billy Bush explicitly allege that Defendant engaged in a pattern and practice of age discrimination.... Ronald Stell's EEOC charge alleges constant threats and harassment as well as the proposition that Defendant was terminating older employees while retaining less productive, younger employees.... In sum, this Court finds that these EEOC charges sufficiently informed both Defendant and the EEOC of the imminent class complaint. This Court finds that the filed EEOC charges of Plaintiffs Hipp, Stein, McKown, Lloyd Ray Bush, Billy Bush, and Ronald Stell may serve to define the temporal scope of the class and denies Defendant's summary motion as a matter of law on this point."

*Hipp v. Liberty Nat'l Life Ins. Co.*, 973 F.Supp. 1033, 1038 (M.D.Fla.1997) (citations omitted).[4]

Although the *Hipp* court speaks of the timeliness of the Bushes' EEOC charges in this paragraph, it is clear from the order that the court's remark is not a conclusion of any argument or reasoning that the court advances, but is simply made in passing as the court discusses how the plaintiffs can define the temporal scope of the class at issue in the lawsuit. The *Hipp* court's conclusory statement, that "there are other unnamed opt-in Plaintiffs who timely filed with the EEOC; namely Lloyd Ray Bush [and] Billy Bush," in no way suggests that this issue was "actually litigated" in that case; and, considering that this one sentence is the only mentioning of the issue in the court's ten-page order, just the opposite is suggested—that there was no litigation on the issue at all.

To support their position that this issue was litigated, the plaintiffs also provided this court with a copy of Liberty National's memorandum of law in support of its motion for summary judgment filed in the *Hipp* case, but this document leads the court to the opposite conclusion as well.[5] In this memorandum of law, the issue of timeliness of the EEOC charges is not even raised by Liberty National, and, being as Liberty National would generally frame the issues addressed in the summary judgment context, this suggests very strongly that the issue was not litigated.

With only one sentence in their favor, and only when taken out of context, the plaintiffs cannot demonstrate that the issue of the timeliness of their EEOC charges was litigated in the *Hipp* case. In addition, in light of this conclusion, the court need not reach the issues of whether the plaintiffs have adequately shown the first and third prerequisites of collateral estoppel.

■ Finally, as a means of saving their claims, all of which are based on discrimination that occurred outside of the 180–day period, the plaintiffs argue that they faced a 'continuing violation.' The law concerning continuing violations is confused, at best, and the Eleventh Circuit has not spoken specifically on the type of continuing violation alleged here. This situation would normally present a substantial challenge for the court in evaluating the plaintiffs' claims, because the court would have to divine the various approaches used by the different courts of appeals to consider these issues, determine

---

4. Later in its order, the *Hipp* court concluded that the Bushes should be dismissed from the lawsuit because they were outside of the scope of the class designated by the plaintiffs, and Coris and Dowling should be dismissed because they were not employed by Liberty National during the relevant period. *See id.* at 1040–41.

5. *See* plaintiffs' exhibit 8.

which approach would be used in the Eleventh Circuit, and then apply that approach to this case. In this case, however, sorting out the law that would be applicable in the Eleventh Circuit will be unnecessary because the plaintiffs cannot succeed under either of the two main approaches used by the various courts. The plaintiffs cannot succeed because they have failed to show that there is any present discrimination, an element that is vital to both approaches, and therefore cannot establish a continuing violation.

 The doctrine of the continuing violation allows a plaintiff to revive, and make actionable, time-barred acts of discrimination by connecting them to discrimination that falls within the 180–day filing period. "[I]f both discrimination and injury are ongoing, the limitations clock does not begin to tick until the invidious conduct ends." *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 183 (1st Cir.1989). The application of the doctrine basically requires that the plaintiff link the time-barred discrimination to some timely discrimination, which can take the form of either another discriminatory act within the 180–day period that is part of a series of related acts, *see, e.g., Mascheroni v. Board of Regents of University of California,* 28 F.3d 1554, 1561 (10th Cir.1994), or an on-going discriminatory policy that continues to operate into the 180–day period, *see, e.g., Bruno v. Western Elec. Co.,* 829 F.2d 957, 961 (10th Cir.1987). *See also Gutowsky v. County of Placer,* 108 F.3d 256, 259 (9th Cir.) (identifying two types of continuing violations), *cert. denied,* —— U.S. ——, 118 S.Ct. 298, 139 L.Ed.2d 229 (1997). In making this showing, it is important to remember that the timely discrimination alleged by the plaintiff cannot simply be a perpetuation of the effects of the past discriminatory acts. *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (citing *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 557, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977)); *see also Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792, 796 (11th Cir. 1992) (There is a distinction "between the 'present consequence of a one time violation,'

which does not extend the limitations period, and the 'continuation of the violation into the present,' which does.").

The first means of proving a continuing violation—linking the time-barred discrimination to another discriminatory act within the 180–day period that is part of a series of related acts—is not relevant here. Neither Bill nor Ray Bush has alleged any discriminatory acts to which his time-barred acts can be linked that took place in the 180–day period prior to his EEOC charge. Moreover, in *Roberts v. Gadsden Memorial Hosp.,* 850 F.2d 1549 (11th Cir.1988), the appellate court amended its earlier decision, *Roberts v. Gadsden Memorial Hosp.,* 835 F.2d 793 (11th Cir.1988), to indicate that even where a continuing violation of the first type is shown—that is, linking time-barred discrimination to another discriminatory act within the 180–day period that is part of a series of related acts—a plaintiff can successfully rely on a continuing violation to revive the time-barred discrimination only where he did not suspect his rights had been violated at the time of the earlier discrimination. *Roberts,* 850 F.2d at 1550. "A claim arising out of an injury which is 'continuing' only because a putative plaintiff knowingly fails to seek relief is exactly the sort of claim that Congress intended to bar by the 180–day limitation period." *Id.* In this case, both Bill and Ray Bush suspected that their rights had been violated. Ray Bush thought both of his demotions were age-related,[6] and he even filed an EEOC charge based on the 1991 demotion.[7] Bill Bush also stated that he found out, within a couple weeks, or possibly months, after his demotion, that he was demoted because of his age.[8] Even giving his statements the most favorable reading possible, Bill Bush would have discovered the basis of his demotion many months before the beginning of 180–day period prior to the filing of his EEOC charge. In light of Bill and Ray Bush's awareness of the basis of their demotions, they would be precluded from stating a continuing violation under the first theory. Presumably, this preclusion would apply to the second theory as well.

---

6. *See* deposition of Lloyd Ray Bush, defendant's exhibit D, at 113–14.

7. *Id.* at 142–44.

8. *See* deposition of Billy F. Bush, defendants's exhibit C, at 41–42.

With respect to the second means of proving a continuing violation—linking the time-barred discrimination to an on-going discriminatory policy that continues to operate into the 180–day period—there are two main approaches to determining whether a plaintiff has successfully alleged a continuing violation.[9] The nature of this type of continuing violation is that "the continuing system of discrimination operates against the employee and violates his or her rights up to a point in time that falls within the applicable limitations period." *Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.1982). The first approach used to evaluate whether such a violation exists is illustrated in *Abrams v. Baylor College of Medicine*, 805 F.2d 528 (5th Cir.1986), and can be called an 'enforcement' approach. Under this approach, as long as the discriminatory policy is in effect during the 180–day period, and there is some

enforcement of the policy against a plaintiff, that plaintiff would be able to file a timely charge. *Id.* at 533–34. There need not be a specific act of discrimination against the plaintiff, but the mere existence of a policy will not suffice to support a timely claim. *Id.* The second approach is illustrated in *Roberts v. North Am. Rockwell Corp.*, 650 F.2d 823 (6th Cir.1981), and can be called an 'on-going policy' approach.[10] Under this approach, the mere existence of a discriminatory policy is sufficient, and so long as the policy is in effect, charges under it are timely. *Id.* at 826–28.

■ Because this case is in the summary-judgment phase, the court looks directly to the proffers of evidence to determine whether there is sufficient evidence to support a claim of a continuing violation.[11] After examining the evidence, the court concludes

**9.** *See* Robert J. Reid, *Confusion in the Sixth Circuit: The Application of the Continuing Violation Doctrine to Employment Discrimination*, 60 U. Cin. L.Rev. 1335, 1342–48 (1992).

Reid's article actually identifies three approaches for evaluating claims of this latter type of continuing violation. The approach that is not discussed here was articulated in *Lorance v. AT&T Technologies*, Inc., 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), and can be called a 'date of injury' approach. In *Lorance*, this approach was used in dealing with a facially-neutral seniority system that was adopted for discriminatory reasons. The Court concluded that the date of the institution of the employer's policy served as the date of injury, and a plaintiff must file a claim within 180 days of this date. *Id.* at 909–13, 109 S.Ct. at 2267–69. This approach is not discussed here for four main reasons. First, from the discussion in the Supreme Court's opinion, the application of this approach seemed very much limited to facts like those in *Lorance*—a discriminatory use of a facially-neutral policy. Second, the continued viability of this approach is called into question because Congress specifically abrogated this ruling with its 1991 amendments to Title VII. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, § 112, 105 Stat. 1071, 1078–79 (1991), as codified, 42 U.S.C.A. § 2000e–5(e)(2). Third, the Eleventh Circuit has indicated that it does not see this decision as relevant in this context. *See Knight v. Columbus, Ga.*, 19 F.3d 579, 585 n. 4 (11th Cir.1994) ("[W]e have previously described *Lorance* as merely an application of the traditional distinction 'between a continuing violation and the present consequences of a one-time past act of discrimination.'") (citations omitted). Finally, even if this approach were still viable, and had widespread application, it would be unavailing for the plaintiffs because they have not al-

leged that the adoption of the discriminatory policy at issue here, nor even the application of the policy, was during the 180–day limitation period.

**10.** The on-going policy approach is much less frequently used than the enforcement approach, and its continued viability is even questionable in the Sixth Circuit. In *Dixon v. Anderson*, 928 F.2d 212 (6th Cir.1991), while citing to *Roberts*, the court held that a plaintiff would have to show some present discriminatory act, not merely the existence of a discriminatory policy, to show a continuing violation. *Id.* at 217–18. This is contrary to the holding of *Roberts*, and, consequently, may overrule or modify *Roberts*. Nonetheless, the court still discusses this approach here because it is the most favorable approach for the plaintiffs, and illustrates the infirmity of the claims because, even under the most favorable approach, they cannot show a continuing violation.

**11.** Because the court has before it the plaintiffs' proffers of evidence, it can assess whether the plaintiffs have alleged sufficient facts to raise a genuine issue of material fact that must be decided at trial, and address the issue at this stage. Consequently, the court need not go back and determine whether a continuing violation was adequately pleaded in Bill and Ray Bush's EEOC charges or complaint. *See, e.g., Wingfield v. United Technologies Corp.*, 678 F.Supp. 973, 977 n. 5 (D.Conn.1988). Before passing this point, however, the court believes that some additional comments are in order.

To be able to pursue a claim of a continuing violation, this claim must be "clearly asserted both in the EEOC filing and in the complaint."

that the evidence is inadequate to support a claim of a continuing violation. All of the evidence presented by the plaintiffs of a policy maintained by Liberty National—the very least they would have to show under either of the approaches—is from the past, or is not associated with specific dates. This leaves the court with no indication that any discriminatory policy Liberty National may have had existed during the 180–day period prior to the filing of the Bushes' EEOC charges. Absent this showing, the Bushes cannot demonstrate a continuing violation.

Looking at the specific evidence the plaintiffs have presented to the court, it is all inadequate for various reasons. First, the plaintiffs proffer comments made by Liberty National officials, point to neutral policies adopted by Liberty National that they assert are being used in a discriminatory way, and describe the specific employment actions taken against the named plaintiffs. Again, the vast majority of this evidence focuses on the year 1993 and earlier, and does not indicate that anything happened during the 180–day

period prior to the filing of the EEOC charges, or even during the time since then to the filing of this lawsuit. Furthermore, even in trying to develop the evidence of discrimination in the past, the plaintiffs' analysis of the effects of Liberty National's policies is very crude, and it reaches very broad conclusions that are not supported by the facts presented. The closest any one event gets is Ray Bush's demotion in March 1994, but that event is still outside of the 180–day period, and is isolated in time from the rest of the evidence. The plaintiffs also point to some other evidence that is not associated with dates, and the court cannot conclude that a continuing violation occurred based on that evidence.[12] Finally, the plaintiffs suggest that there is evidence that is well beyond the filing of the Bushes' EEOC charges that can support their theory of a continuing violation. However, this evidence is not borne out in their proffers, and this is beside the fact that such later evidence cannot cure the untimeliness of the 1994 EEOC charges.[13]

*Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir.1985). Requiring the continuing violation to be asserted in the EEOC filing is important because it is this filing that defines the scope of the EEOC's investigation of a plaintiff's allegations. Great latitude is given to a plaintiff in the writing of his EEOC charge because the process is supposed to be open and accessible to all potential grievants, and they need not have the skills of a lawyer to successfully avail themselves of the process. It cannot be forgotten, however, that the filing of an EEOC charge is not a mere formality. It is supposed to begin a process that will lead to investigation and possibly resolution of the claims, and if a claim is not adequately asserted, this process is completely circumvented. In this case, it is far from clear that the assertion of a continuing violation was sufficient in the EEOC charge. And, based on the fact that the EEOC simply dismissed Bill Bush's complaint as untimely without looking at the issue of a continuing violation, it appears that the assertion of the claim was so lacking that the EEOC did not recognize or investigate it.

As for the plaintiffs' complaint, the court is of the opinion that the plaintiffs failed to assert adequately a continuing violation there as well. Even giving the plaintiffs the full benefits to which they are entitled under a system of notice pleading, the complaint only alleges discrimination that falls outside of the 180–day period, and makes no allegations that there are any acts of discrimination or a policy that extended into the 180–day period. In their complaint, every plaintiff asserts that the adverse employment actions he has faced were the result of the defendant's

"pattern and practice of ridding itself of its older employees." 'Pattern and practice' is permissible in a lawsuit brought by an individual, but these words do not invoke the idea of a continuing violation as defined by the continuing violation case law. Without any hint that the discrimination is on-going, and specifically, no dates that direct the court or the defendant into the 180–day period, the complaint is inadequate.

12. The court considers the lack of dates on some of the evidence the plaintiffs have presented to be telling, and to suggest strongly that their assertion of a continuing violation was not intended from the beginning, and merely an afterthought used in an attempt to save their untimely charges. For the plaintiffs to present the court with any evidence that is not associated with dates suggests that they were not intending to use it to support an allegation of a continuing violation. Dates are critical to alleging a continuing violation, and broad allegations without any dates simply will not suffice. If the plaintiffs had contemplated asserting a continuing violation they would have, in the post-charge and post-complaint period, marshaled the evidence necessary to support such a claim. They simply have not done so here.

13. The evidence from after the filing of the EEOC charges relates to Ray Bush's claim that he was constructively discharged when he retired from Liberty National in June 1996. This evidence is unavailing to the plaintiffs for a number of reasons.

One final attempt has been made by the plaintiffs to bolster their allegations of a continuing violation. The plaintiffs have pending a motion for leave of court to amend their first amended complaint, filed March 20, 1998, that would amend the complaint to assert a claim of failure to promote for Bill and Ray Bush. They also add an allegation that both Bill and Ray Bush continued to apply for promotions, but were denied them because of Liberty National's policies. Even if the court were to grant this motion, and allowed the complaint to be amended, the allegations they make simply are not supported by any evidence, so they would ultimately have to fail.

There is simply not enough evidence to support a claim of continuing violation, and therefore the Bushes are not relieved of complying with the 180–day filing period. Consequently, because Bill and Ray Bush did not file EEOC charges within the 180–day period, summary judgment is appropriate on all of their claims.

## B.

■ Summary judgment is also appropriate as to the claims of Coris and Dowling. Coris and Dowling have never filed EEOC charges, and their only means of participating is to be able 'piggyback,' or, as it is also described, invoke the 'single filing rule,' with respect to the claims of the Bushes. The process of piggybacking allows a person who does not have a valid EEOC charge to rely on another person's EEOC charge to satisfy the prerequisites for bringing a lawsuit. *Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 558 (11th Cir.1997). The doctrine can only be invoked where two requirements are met: (1) the relied upon charge is not invalid; and (2) the individual claims of the filing and non-filing plaintiff arise out of similar discriminatory treatment in the time

---

First, Ray Bush's claim of constructive discharge is no more than that—a claim—because it is not borne out by the evidence. His retirement came well over two years after his last demotion, which makes it implausible that his retirement is closely related to any of the earlier discrimination he has alleged. And, as stated earlier in this order, the plaintiffs present no evidence of any discriminatory policy or harassment committed by Liberty National during the time between these two events, thus further undermining his claim of constructive discharge. The only evidence the plaintiffs offer in support of the claim of constructive discharge that is even close to the time Ray Bush left Liberty National is that Ray Bush thought it was to his benefit to retire earlier rather than later to maximize his retirement benefits. This is far from enough evidence to allow a jury to conclude that "the terms or conditions of employment under which [he] is asked to work are so intolerable that a reasonable person in [his] position would have been compelled to resign," *Thomas v. Dillard Dep't Stores, Inc.*, 116 F.3d 1432, 1434 (11th Cir.1997), the showing that is necessary to make out a claim of constructive discharge.

Second, Ray Bush's claim of constructive discharge occurred after he filed his last EEOC charge in October 1994, and thus was not alleged in that charge. The plaintiffs argue that the 1994 charge can still encompass the constructive discharge because the constructive discharge grows out of the allegations contained in the EEOC charge. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465–66 (5th Cir. 1970). The court agrees that it is possible for an EEOC charge to encompass claims that occurred after it was filed if the later claims are appropri-

ately related to the allegations in the charge; however, the court believes that this argument presupposes a valid charge in the first place. The later claims, which by themselves could not support a lawsuit because they are not the subject of an EEOC charge, cannot be used as a means of reviving others that are unable to independently support a lawsuit, which is precisely what the plaintiffs are trying to do here. Two wrongs do not make a right under these circumstances.

Finally, even if the court believed there was sufficient evidence to make out a claim of constructive discharge, it is doubtful that the court could allow this evidence to be used to relieve the plaintiffs of their obligation to comply with the 180–day filing period. As the Fifth Circuit recognized in *Abrams v. Baylor College of Medicine*, 805 F.2d 528 (5th Cir.1986), "This theory of continuing violation has to be guardedly employed because within it are the seeds of the destruction of statutes of limitation in Title VII cases." *Id.* at 533. Although this remark was made in the context of another expansion of the continuing violation doctrine, its point is well taken here. Allowing the plaintiffs to come forward with evidence that occurred 21 months after the filing of Ray Bush's EEOC charge as a means of saving his earlier untimely claims, with no evidence of any other discrimination in between, opens up practically any discriminatory act to the possibility of being revived. This effectively wipes out the requirement of the filing period, which is an important prerequisite to a lawsuit that was required by Congress. Under these circumstances, the court could not allow the filing period to be destroyed.

frame. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1101–02 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 435, 136 L.Ed.2d 332 (1996). In this case, because the court has concluded that the Bushes' charges are not valid, Coris and Dowling cannot rely on them, and their claims are invalid as well.

### IV. CONCLUSION

For the foregoing reasons, Liberty National's motion for summary judgment will be granted. An appropriate judgment will be entered.